Charles M. BROWN, Jr., Plaintiff,

v.

CHICAGO HORTICULTURAL
SOCIETY, Defendant.

No. 93 C 1811.

United States District Court,
N.D. Illinois, E.D.

April 7, 1993.

Charles M. Brown, Jr., pro se.

MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Charles M. Brown, Jr. petitions this court for leave to file *in forma pauperis* and for appointment of counsel. He is a black man who alleges that the defendant, the Chicago Horticultural Society, discriminated against him through a pattern of disparate treatment, culminating in his termination in late July 1991.

The Petitioner alleges that his employment difficulties began on June 6, 1991, when the Manager of the Security Department of the Chicago Botanic Garden

issued a verbal policy directive via an open organization-wide radio circuit to use unnecessary, inappropriate and excessive physical force to ASSAULT & BATTER paying visitors to the Chicago Botanic Gardens who rode their bicycles in the wrong direction down the Garden entrance road.

(Complaint at ¶ 10; emphasis in original). The Petitioner alleges that he "immediately recognized the obvious illegality and inappropriateness of the policy directive, and [he]

subsequently both refused to comply and challenged its validity." *Id.* After this incident, the Petitioner alleges that he was repeatedly threatened with termination for insubordination and for refusing to enforce the bicycle battery policy.

On July 13, 1991, the Petitioner received a poor performance rating at his annual performance evaluation. On Saturday, July 20, 1991, a second meeting was held to discuss the Petitioner's "rebuttal" of his performance evaluation. During this meeting, the Petitioner

> was informed that he was to be subjected to a new "Special Policy" in which he would be docked 30 minutes of pay if the Plaintiff was 1 minute late in checking in for work as opposed to the previous policy of 15 minutes which remained in effect for the remainder of the staff.

*Id.*

On Friday, July 26, 1991, the Petitioner submitted a written memo requesting time off to take a vacation. The Petitioner delivered this memo by sliding it under the locked door of his Supervisor's office. At this time, the Defendant allegedly had no formal or informal policy or regulations regarding vacation requests. On Wednesday, July 31, 1991, the Petitioner's vacation request was denied on the grounds that sufficient prior notice had not been given. The Petitioner sought to "challeng[ ] this assertion" regarding inappropriate notice, but his Supervisor "hung up abruptly without entertaining any further discussions, negotiation or compromises." *Id.* at ¶ 14. The Petitioner nevertheless "left on his vacation as planned", *Id.*, and was subsequently terminated.

Following his termination, the Petitioner filed an application for unemployment benefits that was ultimately denied. *Id.* at ¶¶ 19–24. He also filed a charge with the EEOC, and on December 31, 1992, the EEOC issued its determination in which it found that "the evidence obtained during the investigation does not establish a violation of the statute [Title VII]." (Exhibit A, EEOC Letter).

The Petitioner subsequently filed the instant suit.

## DISCUSSION

When a person petitions for leave to file in forma pauperis, the court is obligated to review the petitioner's materials and to satisfy itself on two scores: first, that the petitioner's claim of poverty is true and, second, that the proposed action is not frivolous or malicious. *See* 28 U.S.C. § 1915(a) and (d); *Castillo v. Cook County Mail Room Department*, 990 F.2d 304, 305–06 (7th Cir. 1993); *Smith–Bey v. Hospital Admr.*, 841 F.2d 751, 757 (7th Cir.1988). At the preliminary stages of litigation, a complaint is frivolous "only if the petitioner can make no rational argument in law or facts to support his claim of relief." *Smith–Bey*, 841 F.2d at 757.[1] When reviewing a claim for frivolity under § 1915(d), a court may "pierce the veil of the complaint's factual allegations," meaning that it is not bound "to accept without question the truth of the plaintiff's allegations." *Denton v. Hernandez*, —— U.S. ——, ——, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

In the case at bar, the court is satisfied that the Petitioner is poor enough to proceed in forma pauperis. Although he is presently employed, his monthly after tax income is only $464.00, and his only listed assets are a "used car, personal clothes, furniture and other misc. personal items."

The court is not, however, satisfied that the proposed action is not frivolous or malicious, even under the extraordinarily low standard articulated in *Castillo*.[2] First, the Petitioner's assertions regarding the alleged

1. In *Castillo*, for example, the accidental opening of three prisoner letters containing legal correspondence over the course of eight months was held to constitute a "colorable" constitutional claim sufficient to preclude dismissal under § 1915(d). *Castillo*, 990 F.2d 304, 307–08.

2. In his dissenting opinion in *Castillo*, Judge Coffey wrote, "I fail to understand how the inadvertent opening of three letters, only one of which was clearly marked legal mail, violated any constitutional right or constituted an injury ... The accidental opening of three letters amounts to nothing more than a relatively short term, noncontent-based interruption in the delivery of mail." *Castillo*, 990 F.2d 304, 308 (Coffey, J., dissenting).

bicycle battery policy are irrational. Second, the Complaint recites numerous incidents which are indicative of malice toward the Defendant, including the Petitioner's refusal to comply with, and challenge to, the alleged bicycle battery policy; the Petitioner's "rebuttal" of his unsatisfactory performance review; and the Petitioner's anger over his Supervisor's refusal to engage in "any further discussions, negotiations or compromises" regarding his vacation. Third, both of the independent entities who reviewed the Petitioner's claim (i.e., the EEOC and the Illinois Department of Employment Security) found it meritless. Finally, despite the Petitioner's poor performance evaluation and apparent insubordination, he was only terminated after he took his vacation in direct contravention of his Supervisor's order. Accordingly, the petition to proceed *in forma pauperis* is denied.

 As to petitioner's application for appointment of counsel, the Seventh Circuit has stated that prior to evaluating the *Maclin* factors for appointment of counsel (*see, Maclin v. Freake*, 650 F.2d 885, 887 (7th Cir. 1981)), a district court must determine whether the indigent has made reasonable efforts to retain counsel and was unsuccessful. *Jackson v. County of McLean*, 953 F.2d 1070, 1072 (7th Cir.1992) ("By its own terms, § 1915(d) dictates that an indigent must have made an unsuccessful attempt to obtain counsel *before the request can be considered*" (emphasis added); *see, also, Barnhill v. Doiron*, 958 F.2d 200, 202 (7th Cir.1992).[3] The Petitioner does not provide any information regarding his attempts to obtain counsel. Accordingly, the Petitioner's motion for appointment of counsel is improper. Even if Petitioner had detailed his attempts to obtain counsel, his motion for appointment of coun-

sel would still be denied due to his claim's apparent lack of merit. Accordingly, it is hereby denied.

## CONCLUSION

For all of the foregoing reasons, the Petitioner's motions for leave to file *in forma pauperis* and for appointment of counsel are denied.

---

3. In *Castillo*, the Seventh Circuit found that the "factors to be considered when responding to a request for appointed counsel, however, are well known. *Barnhill v. Doiron*, 958 F.2d 200, 202 (7th Cir.1992). We believe that it would serve the interests of justice in this case for Castillo to be represented by counsel ... Therefore, it would have been advisable for the district court to have appointed counsel for Castillo, *despite his failure to tender a request*. Upon remand, we instruct the district court to appoint counsel for Castillo." *Castillo*, 990 F.2d 304, 307–08 (emphasis added). The citation of *Barnhill* in *Castil-*

*lo* is ironic, given that in *Barnhill* the Seventh Circuit explained that a district court "should not undertake the *Maclin* inquiry *without first determining whether the prisoner made reasonable efforts to retain counsel* before resorting to an appointment by the court." *Barnhill*, 958 F.2d at 202 (emphasis added). Because of the inconsistency between *Castillo* and the "well known" appointment of counsel factors *Castillo* ostensibly applied, this court does not consider this portion of *Castillo* to bear great precedential value.